UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY JANE GROSS and
TERRY GROSS,

    Plaintiff,

vs.                                            Case No: 12-15268
                                                 Honorable Victoria A. Roberts

CITY OF DEARBORN HEIGHTS,
NICHOLAS SZOPKO,
CPL. PELLERITO, MICHAEL FRASER, and
SGT. BEEDLE-PEER, in their individual and
official capacities,

    Defendants.

_____

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. 35)**

**I.    INTRODUCTION**

This 42 U.S.C. § 1983 (§ 1983) action arises out of the arrest of Mary Jane Gross on August 10, 2012. This was the City of Dearborn Heights' ("City") second attempt to arrest Mrs. Gross on an extradition warrant issued by the state of Kentucky.

The first attempt ended when Mrs. Gross convinced arresting officers that they had the wrong person. Without a photo, they left empty-handed.

On August 10, 2012, Mrs. Gross again warned officers that it was her sister they should arrest. But, her claims of innocence were rejected. This time they had a picture of Mrs. Gross and a letter from the State of Kentucky saying that Mrs. Gross was

1

wanted. Kentucky later determined that it made a mistake; it really intended to extradite Mrs. Gross' sister.

During the arrest Mrs. Gross was injured. Her brief says that Officer Szopko forced her head into dishes and Corporal Pellerito used his knee to push her knee into the cabinet -- after she was handcuffed -- simply because she asked for proper clothing. However, during her deposition Mrs. Gross said that she was injured while resisting arrest and before she was handcuffed.

There is audio of Mrs. Gross screaming that her knee is broken. After Mrs. Gross was taken to the police station, she states again that her knee is broken and that she cannot walk. She was not provided medical treatment for her knee during her one day incarceration at the City. She was, however, told by officers to not put pressure on her foot; they provided her a wheelchair.

Mrs. Gross brings suit for illegal entry, unlawful seizure, excessive force, violation of due process, malicious prosecution, free speech retaliation, and deliberate indifference to a serious medical need.

Her husband, Terry Gross, sues for loss of consortium.

Defendants move for summary judgment. The City says Mrs. Gross fails to identify a policy that would subject it to liability under *Monell v. Dept. Of Social Services,* 436 U.S. 658 (1978).

Individual Defendants assert qualified immunity; they say there were no constitutional violations.

The Court **GRANTS** Defendants' motion in its entirety.

## II. BACKGROUND

On March 7, 2012, two officers went to the Gross residence to execute a felony extradition warrant received from Kentucky for drug trafficking for Mrs. Gross. When the officers arrived, Mrs. Gross told them that the warrant should be for her sister. Mrs. Gross gave the officers her sister's photo, license and address. Mrs. Gross also explained that her sister used Mrs. Gross' identity in Kentucky.

The officers called the Kentucky state police and requested a photo and/or fingerprints of the suspect it wanted arrested. The Kentucky state police could not provide the information, and Mrs. Gross was not arrested.

On August 10, 2012, the City received a second felony extradition warrant for Mrs. Gross from Kentucky. This time the extradition warrant packet included a photograph of Mrs. Gross and a letter saying that Mrs. Gross was indeed the person who should be arrested. The warrant was confirmed in the Law Enforcement Information Network ("LEIN") and provided to Officer Szopko to execute.

When Officer Szopko arrived at the Gross residence, he radioed for backup. Sergeant Beedle-Peer and Corporals Ciochon and Pellerito arrived at the Gross' home and set up a perimeter. Officer Szopko walked to the back door to serve the warrant.

Audio of the arrest establishes that Mr. Gross came to the back door once he saw Officer Szopko in the yard. Officer Szopko told Mr. Gross that he was investigating a neighborhood complaint. Mr. Gross questioned the validity of the complaint. Officer Szopko ignored Mr. Gross' questioning and asked Mrs. Gross to identify herself. Mrs. Gross stated that her name was Mary. Mrs. Gross was then asked to come outside. She began screaming, "I did not do nothing!" Mrs. Gross was next informed that there

was a warrant for her arrest. She screamed "Let me go!" She was told again that there was a warrant for her arrest. Mrs. Gross asked if she could get dressed. The officers told her they would grab the clothes. There is commotion for a few seconds. Then, Mrs. Gross screamed, "You broke my leg!" Someone else screamed "Don't resist!" Mrs. Gross is told that she has to walk. Meanwhile, Mrs. Gross insists that it is her sister who is wanted, but she is informed that it is she whom Kentucky police want. The officer tells her to hop to the patrol car instead of putting weight on her foot.

Different versions of events supplement the audio:

| Source | Testimony |
| --- | --- |
| Brief | Relies on Mr. Gross' deposition testimony, which contradicts Mrs. Gross. |
| Mrs. Gross' Deposition | Mr. Gross sees warrant. Officers grab her at the sink; tell her she is under arrest; but, she holds onto the sink. Officer Szopko forces her head into the dishes. Corporal Pellerito pushed his knee into her knee. She lets go of the sink and is cuffed. Mr. Gross tells officers to allow her to put clothes on. |
| Mr. Gross' Deposition & Affidavit | The officers grabbed Mrs. Gross near the living room entry to the kitchen and handcuffed her. When Mrs. Gross asked for clothes, Officer Szopko forced her head into dishes and Corporal Pellerito pushed his knee into her knee, which hits the kitchen cabinet. |

| Officer Szopko's Deposition | Mrs. Gross identified herself at the back door. He told Mrs. Gross there was a warrant for her arrest and grabbed her arm; she pulled away. He entered the home and grabbed Mrs. Gross' arm again. Corporal Pellerito grabbed her other arm. Mrs. Gross continues to resist and maneuvers her way to the sink, which she grabs. They then cuff her. |
|---|---|
| Corporal Pellerito's Deposition | Corporal Pellerito's testimony is similar to Officer Szopko's. |

Notably, there is alignment in the deposition testimony of Szopko, Pellerito and Mrs. Gross.

There is video and audio of Mrs. Gross' booking. The video shows that Mrs. Gross is escorted into the booking area while hopping on one foot. When she enters the area, she is seated and is visibly moaning and rubbing her knee. Mrs. Gross says a couple of times that her knee is broken. However, throughout booking she remains calm and does not appear to be in pain until she attempts to stand. Whenever she attempts to stand, officers assist her. Mrs. Gross made one request to see a doctor: she asks to see a doctor for her knee before being sent to jail. Instead of medical attention, she is provided a wheelchair.

Mrs. Gross was booked at the City jail. The next day she was transferred to Wayne County jail; she spent seven days there before her release. She sought

medical treatment for her knee the next day. An x-ray confirmed that her leg was broken.

## III. STANDARD OF REVIEW

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Accordingly, if a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

## IV. ANALYSIS

### A. INDIVIDUAL DEFENDANTS

**42 U.S.C. § 1983 and Qualified Immunity**

Mrs. Gross' federal claim is based on § 1983, which allows a plaintiff to recover damages for violations of constitutional rights by individuals or municipalities acting under color of law. To recover under § 1983, Mrs. Gross must show: (1) Individual

6

Defendants violated her constitutional rights and (2) that the right was clearly established at the time of the violation. "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. Of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009).

1.  **Illegal Entry**

Mrs. Gross says the Individual Defendants entered her house without authorization and failed to knock and announce their purpose. Individual Defendants say they were legally entitled to enter the house with the warrant.

"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 584, 100 S. Ct. 1371, 1388 (1980). Police entry into the Gross residence to execute a warrant was not unlawful.

But, the Supreme Court does hold that even with a valid search warrant, the method of entry must be reasonable; police are required to knock and announce their presence prior to entry. *See Wilson v. Arkansas*, 514 U.S. 927, 929, 115 S. Ct. 1914 (1995). Officers may satisfy the knock and announce requirement by identifying themselves as police, even where they do not give their purpose in demanding entry. *See United States v. Finch*, 998 F.2d 349, 354 (6th Cir. 1993).

Individual Officers satisfied the knock and announce requirement. The audio recording picked up an officer asking Mr. and Mrs. Gross their names. When Mrs. Gross identified herself, she was told that there was a warrant for her arrest.

Further, Mr. Gross' testimony is that uniformed police officers knocked on the

back door and told him to open it. Mr. Gross testified that he unlocked the door.

There is no genuine dispute; Individual Defendants identified themselves and their purpose; the knock and announce requirement was satisfied.

### 2. Unlawful Seizure

Mrs. Gross does not challenge the validity of the arrest warrant; rather, she argues Individual Defendants are liable for unlawful seizure because they entered her home prior to knocking and announcing their presence.

The Court has already determined that the officers employed proper methods to enter the residence; they cannot be held liable for seizure on the ground that the entry was unlawful.

This claim is dismissed.

### 3. Excessive Force

Mrs. Gross alleges that Individual Defendants placed the handcuffs on her wrists too tight, pushed her head, broke her knee and dragged her to the patrol car. When there are multiple instances of force used, the rule in this circuit is to "carve up the incident into segments and judge each on its own terms to see if the officer was reasonable at each stage." *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996) (internal quotation marks omitted).

Sergeant Beedle-Peer and Corporal Ciochon request that this claim be dismissed against them because they did not participate in effectuating Mrs. Gross' arrest.

The Sixth Circuit holds "that a police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to

know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (internal quotation marks omitted).

Their motion is granted; Mrs. Gross presents no evidence that they participated in her arrest. And, Mrs. Gross does not argue and nothing in the record supports failure to intervene. *See Wells v. City of Dearborn Heights*, No. 12-1051, 2013 U.S. App. LEXIS 17926 (6th Cir. August 26, 2013).

Officer Szopko and Corporal Pellerito did arrest Mrs. Gross. They, too, request summary judgment, arguing reasonable force to secure Mrs. Gross was used. They point out that although Mrs. Gross' brief says that she was arrested and then attacked, her recitation of events in her brief is inconsistent with the audio and her own testimony. They say Mrs. Gross' brief cannot be used to contradict her sworn testimony.

Generally, credibility determinations are made by a jury. However, in *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court held " When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. In *Harris*, a *video* recording "clearly contradict[ed]" the plaintiff's version of the facts; therefore, the Supreme Court disregarded the plaintiff's testimony. *Id.* at 378.

Mrs. Gross' brief, which relies on Mr. Gross' testimony, argues that Mrs. Gross was beaten after she was handcuffed. This is inconsistent with Mrs. Gross' own sworn testimony and is otherwise contradicted by the record. The Court declines to adopt the briefed version of events. Mrs. Gross testified that force was used before she was

handcuffed. A party "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597 (1999).

The Court only considers whether Mrs. Gross' claims of force were excessive, i.e, a constitutional violation, as described in her deposition testimony, not as argued in her brief.

Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). This "reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* "[O]nce a suspect is passively complying with an officer's commands, that suspect has a clearly established right to be free from force beyond what is necessary to carry out the arrest." *Cole v. City of Dearborn*, 448 F. App'x 571, 576 (6th Cir. 2011).

The factors courts consider are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S.

at 396.

### i. Head and Knee/Leg Injuries

Viewing the facts most favorable to Plaintiff, the Court finds Officer Szopko and Corporal Pellerito acted reasonable when arresting Mrs. Gross. She says Officer Szopko pushed her head, once, and Pellerito pushed his knee with his knee, once, presumably to immobilize and handcuff her. By her own testimony, Mrs. Gross did not passively comply; she resisted arrest by holding on to the sink. The officers' actions were reasonable to arrest a resisting felony suspect; and there was no force post arrest. *Jackson v. Wilkins*, 517 Fed. Appx. 311, 316 (6th Cir. Mich. 2013)(kicking, tasing and punching is reasonable force to subdue and handcuff resisting suspect); *c.f. Carpenter v. Bowling*, 276 F. App'x 423, 426-28 (6th Cir. 2008) (issue of fact when plaintiff was thrown against van, was not resisting arrest, and sought medical treatment resulting in physical therapy for injuries).

### ii. Tight Handcuffs

"[I]n order to reach a jury on [an excessive force] claim, the plaintiff must allege some physical injury from the handcuffing, see *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001), and must show that officers ignored plaintiff's complaints that the handcuffs were too tight." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005).

Nothing in the record shows that Mrs. Gross complained that the handcuffs were too tight. *See Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002)(rejecting excessive-force claim where officers left defendant tightly handcuffed for three hours because defendant did not initially complain about the handcuffs, and when he did complain the officers responded promptly).

### iii. Dragging/Foot Injury

There is no evidence that Mrs. Gross was dragged from her house to the police car. Mrs. Gross testified that she walked to the patrol car. The audio supports that officers told Mrs. Gross to hop and not put pressure on her foot.

All of Mrs. Gross' claims of excessive force are dismissed.

### 4. Free Speech Retaliation

Mrs. Gross argues that she was attacked for requesting time to put on proper clothing in violation of the First Amendment. Individual Defendants say any force used was not tied to an exercise of First Amendment rights; it was the amount of force necessary to complete Mrs. Gross' arrest.

The First Amendment guarantees the right to free speech. The elements of a First Amendment retaliation claim are:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wilkerson v. Warner*, No. 12-1510, 2013 U.S. App. LEXIS 22477, *24 (6th Cir. October 31, 2013)(unpublished)(quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (opinion of Moore, J.) (citations omitted).

In other words:

> For a plaintiff to state a claim for First Amendment retaliation, he must show that the injury was material, Bloch, 156 F.3d at 678 (that the injury "would likely chill a person of ordinary firmness from continuing to engage in that activity"), "that his conduct was constitutionally protected," and that it was a "motivating factor" behind the government's actions. Adair v. Charter County

> of Wayne, 452 F.3d 482, 492 (6th Cir. 2006); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). A "motivating factor" is essentially but--for cause--"without which the action being challenged simply would not have been taken." Greene, 310 F.3d at 897.

*Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007).

No evidence supports this claim. Audio of the arrest supports that moments after Mrs. Gross requested her clothing, someone yelled "Stop resisting!" There was no retaliation; only the amount of restraint necessary to effectuate the arrest.

No genuine dispute exists, and Individual Defendants are entitled to qualified immunity.

### 5.    Deliberate Indifference to Serious Medical Needs

Mrs. Gross alleges that Corporal Pellerito broke her knee when arresting her. She alleges she repeatedly told Individual Defendants that her knee was broken, cried out in pain, and was unable to walk or stand, but Individual Defendants failed to provide her medical attention.

Individual Defendants say they are entitled to qualified immunity because Mrs. Gross fails to establish a *prima facie* claim of deliberate indifference. The Court agrees.

The Due Process Clause of the Fourteenth Amendment guarantees that pretrial detainees are not unnecessarily and wantonly subjected to pain by jail guards. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The deliberate indifference test has objective and subjective requirements:

> The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in Farmer, "The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently

13

culpable state of mind."

*Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

"A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. Ohio 2013)(citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

The Sixth Circuit also determines the seriousness of a deprivation by examining the effect of a delay in treatment, *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001), when "an inmate [] complains that delay in medical treatment rose to a constitutional violation[,]" Id., or if an inmate suffers from a latent injury. *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013)("latent medical injuries . . . require a showing that the delay in treatment itself caused a serious medical injury").  To prevail, an inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment . . . ." *Napier*, 238 F.3d at 742.

Mrs. Gross' claim is predicated on the injury being obvious.  But, the injury was latent.  It was only discovered after x-ray.  Mrs. Gross also fails to establish the second subjective component, which requires Individual Defendants to have a "sufficiently culpable state of mind."

In order to satisfy the subjective requirement, "[t]here must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. *See Farmer*, 511 U.S. at 835. The defendant must have "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs."' *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir.

14

2013)(quoting *Blackmore*, 390 F.3d at 896).

Mrs. Gross says that because the officers provided her with a wheelchair, told her to hop on one leg, and assisted her with standing, she has presented sufficient evidence. But, all this shows is that the Individual Defendants responded to Mrs. Gross' complaint of pain and tried to alleviate it. Individual Defendants looked at her leg and could see that it was neither red nor swollen; there was no visible damage. Mrs. Gross does not argue that there was. The evidence presented is insufficient to establish the subjective component.

This claim is dismissed.

### 6.     Malicious Prosecution

Mrs. Gross alleges that she was maliciously prosecuted, but does not respond to Individual Defendants' request for summary judgment.

Even so, the Federal Rules of Civil Procedure require that the party filing a motion for summary judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact." *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir.1991). "In other words, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id.*

The Sixth Circuit "recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment which encompasses wrongful investigation, prosecution, conviction and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). In order to prevail on this claim, a plaintiff must demonstrate

that (1) the defendant participated in the decision to prosecute the plaintiff, (2) probable cause did not support the institution of legal process, (3) the plaintiff suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure as a result of the institution of proceedings, and (4) the outcome of legal proceedings was in the plaintiff's favor. *Id.* at 308-09. "[A] plaintiff must show, at a minimum, that there was no probable cause to justify [his] arrest and prosecution." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)(citations omitted); see also *Sykes*, 625 F.3d at 310-11 (same).

In a civil rights case, officers are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989) (citations omitted). To overcome Defendants' judicial probable cause, Mrs. Gross must establish "(1) a substantial showing that the Defendant stated a deliberate falsehood or showed a reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.*; see also *Wilson v. Russo*, 212 F.3d 781, 786 (3rd Cir. 2000).

Individual Defendants arrested Mrs. Gross under a judicial determination of probable cause. There is no evidence that Individual Defendants submitted false information. This claim is dismissed.

### 7. Procedural Due Process

Mrs. Gross' Complaint says "The Individual Police Officers' actions violat[ed] . . . [t]he right to procedural and substantive due process and fair treatment during investigation."

Mrs. Gross does not respond to Defendants' motion for summary judgment.

Because this claim is poorly pled, the Court cannot tell what actions form the

bases for it. It is dismissed.

### 8. Mr. Gross' Loss of Consortium Claim

The Complaint alleges that Mr. Gross lost companionship due to the injuries his wife sustained during her arrest. Individual Defendants say this derivative claim fails because they are entitled to summary judgment on all of Mrs. Gross claims.

"A claim for loss of consortium is simply one for loss of society and companionship." *Eide v. Kelsey–Hayes Co.*, 431 Mich. 26, 29, 427 N.W.2d 488 (1988). Although a loss-of-consortium claim is derivative of underlying bodily injury, it is nonetheless regarded as a separate, independent cause of action. *Id.* at 37, 427 N.W.2d 488 (citing *Montgomery v. Stephan*, 359 Mich. 33, 41, 101 N.W.2d 227 (1960), and Prosser & Keeton, Torts (5th ed.), § 125, pp. 931–934).

Even though loss of consortium is an independent claim, it is contingent on a spouse's recovery for injuries sustained. *Berryman v. K Mart Corp.*, 193 Mich.App. 88, 94–95, 483 N.W.2d 642 (1992) (" A claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury.").

The Court has already held that none of Mrs. Gross' claims is sufficient to survive summary judgment, neither can this one.

To further support dismissal, Individual Defendants say this claim fails because Mr. Gross fails to identify the injuries underlying his loss of consortium claim. This, too, is true.

"A party claiming damages arising from loss of consortium must prove those damages by a preponderance of the evidence." *Id.* (citing *Washington v. Jones*, 386 Mich. 466, 472, 192 N.W.2d 234 (1971)).

The record shows no evidence of damages. Mr. Gross does not identify specifically what he lost. He devotes one sentence, and all Mr. Gross states is that he has a claim. This conclusion cannot survive summary judgment and is dismissed.

**B.    THE CITY**

### *Monell* Liability

Mrs. Gross says unspecified, unconstitutional policies or practices of the City led to excessive force against her and denial of medical attention. Mrs. Gross concedes that she failed to produce evidence sufficient to hold the City liable, but she requests additional time to depose the City's Police Chief: "Plaintiffs are unable to attach any such support in opposition to Defendants' Motion for Summary Judgment related to Plaintiffs' claims against the City of Dearborn Heights . . . Plaintiffs' attorney has attached an affidavit under Rule 56 and requests this Court to allow Plaintiffs to receive the records ordered as well as to depose the police chief prior to completing their response to this part of Defendants' motion." Plaintiffs' Response to Defendants' Motion for Summary Judgment, Doc. 40 at 1, 25.

A city is liable for the acts of its employees under § 1983 only for injuries that result from an official policy or governmental custom, even if that custom has not been formally approved. *Monell*, 436 U.S. at 690-91 (1978); *Molton v. City of Cleveland*, 839 F.2d 240, 243-44 (6th Cir. 1988). As "governmental bodies can act only through natural persons, . . . governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S. Ct. 915 (1988). "[A] political subdivision is liable only for the unconstitutional injuries caused by its employees

pursuant to the subdivision's policy or custom." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 471 (N.D. Ohio 2012)(citing *Monell*, 436 U.S. at 690-91 (1978) and *Praprotnik*, 485 U.S. at 122)). The City "is liable to plaintiffs, therefore, only for constitutional injuries to plaintiffs caused by its employees." *Id.*

Because there was no constitutional violation, there is no *Monell* liability.

### IV. CONCLUSION

Defendants' motion is **GRANTED**. Plaintiffs' claims are **DISMISSED**. There is no genuine issue for trial.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: January 30, 2014

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 30, 2014.

s/Linda Vertriest
Deputy Clerk